## N. T. NELSON v. THE STATE.

No. 17625.   Delivered October 16, 1935.

The opinion states the case.

*J. Shirley Cook,* of Vernon, and *Martin & Shipman,* of Abilene, for appellant.

*Ed. L. Gossett,* Dist. Atty., of Vernon, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

LATTIMORE, JUDGE.—The State's motion for rehearing herein has led to a careful review of the law found in Chap. 219, Acts Regular Session 43rd Legislature, making it a felony to tap any pipe line, conduit or storage tank constructed for the purpose of transporting or storing crude oil, natural gas, etc.; also Art. 1056 of our Penal Code which makes him guilty of a misdemeanor who intentionally prevents (1) gas from passing through any meter belonging to any person or corporation making or selling * * * gas for lighting, power or other purposes, which meter had been furnished to register the * * * gas, etc., passing through same; or (2) who intentionally prevents any meter from registering the quantity of * * * gas, etc. supplied, or interferes in any way with its proper action or registration; or (3) without the consent of such person, corporation, etc., intentionally diverts any * * * gas * * * from any pipe or pipes of such person, etc.; or (4) intentionally uses, or causes to be used, without the consent of such person, corporation, etc., * * * any gas manufactured or distributed by such person, corporation, etc.; or (5) who retains possession of, or refuses to deliver, any meter, * * * which may have been loaned them by any person, corporation, etc., for the purpose of furnishing * * * gas, etc., through the same with the intent to defraud such person, etc.,—shall for every such offense be fined not less than twenty-five nor more than one hundred dollars.

Conviction in the case before us was under the article first referred to, and appellant was held guilty of a felony. The undisputed facts show that in January, 1933, the Community Natural Gas Company by an employee unsealed for appellant a gas meter on one of its service lines in the city of Vernon, and began furnishing appellant through said meter natural gas for use in his house. On June 1, 1933, the testimony shows that said meter was sealed by means described by witnesses so as that the gas flow into appellant's house was cut off. In January, 1934, it was discovered that gas was flowing through said meter. In February following the gas company found that the meter had been "killed," that is,

so tampered with as that gas would go through same but would not register. Said meter was then taken out. It was also discovered that holes had been bored in the stop cock of the meter so that gas could pass through. On February 12th examination of the meter showed that by means of rubber hose, connection had been made by which gas again flowed into appellant's house. The day following it was also found that the hose had been removed. The wife of appellant testified that she herself made the connection with the rubber hose mentioned; that appellant was sick when she did it.

Under these facts we were of opinion that appellant should have been prosecuted, if at all, for the misdemeanor offense set out in Art. 1056, supra, and we reversed the case. Upon further consideration, and in the light of the State's motion for rehearing, we hold that our former opinion was correct to the extent of directing reversal of the case upon the ground that the accused should have been prosecuted under Art. 1056, supra; but further hold that expressions and reasons advanced in said former opinion might lead to some confusion, and we here withdraw same and substitute what appears in this opinion, in lieu thereof.

Art. 1056, P. C., both as originally enacted in 1905, and as same appears in its present form in the Annotated P. C., 1925, has for its purpose the proper punishment of any person who tampers with a meter regulating the measure or flow of gas, water or electricity; or who goes around the meter furnished by a person or company to measure the commodity furnished; or who prevents the registration of such meter; or who in any way interferes with same; or who without the consent of the person or company installing same intentionally diverts the gas, etc., or in any other way intentionally uses or causes to be used without the consent of such person or company, such gas, etc. There is nothing in said article which makes any difference between the guilt of the user or diverter of natural gas or artificial gas.

The framers of the law evidently had in mind that in any service line leading into the premise intended to be serviced, there would be installed a meter or measuring device intended to care for the rights of both the purchaser and seller of gas, etc., and that interference with such device or means used by the purchaser so as to get gas, etc., from such pipe in evasion of or fraud upon same,—was an act for which the person guilty thereof should be made to pay a fine when convicted.

Between 1905 and the enactment of the Act of the 43rd

Legislature, above referred to, forbidding tapping of pipe lines, etc., the tremendous development of our oil industry came about, and pipe lines, which are held to be common carriers, were built ribboning the State from end to end, and lateral and gathering lines laid to and from these great pipe lines. Storage tanks holding great quantities of oil, etc., have been built. It appears evident that one tapping such lines or tanks could and might inflict great injury and appropriate large properties, and the 43rd Legislature saw fit to enact said law making him who tapped a pipe line, conduit or storage tank a felon. That there was no necessary intent to make the two laws under discussion in conflict, seems plain. The older law seems to have been made to fit the case of one who, having entered into a contractual relationship with a person or company for the furnishing of gas, thereafter tampered with a meter or went around the same, should be punished for a misdemeanor. It is our duty to uphold both of these laws if we can, and to direct the application of each, if possible, to any given state or facts so as to uphold any proper effort at such application, and prevent injury from attempted improper application of either.

In the case of City of San Antonio v. Toepperwein, 133 S. W., 416, our Supreme Court, speaking through the lamented Judge Brown, laid down the sound rule that in construing two constitutional provisions relating to the same subject, the courts must so construe them, if possible, as to give effect to both, and where they appear in conflict, should hold that a special provision would prevail over a general provision on the same subject. The same rule obtains in construing statutes, as has been declared in many cases.

That this appellant, if in fact he did bore holes in any part of the meter furnished his service line by the gas company installing same, so as to allow gas to pass through after the meter had been cut off; or if he did in fact go around said meter by the use of hose which allowed the gas to flow from said service pipe into his house after the meter had been cut off,—would be guilty of a violation of Art. 1056, supra, need not be here debated. Whether such act would be a tapping of a pipe line or conduit under the general statute of the 43rd Legislature, is a matter of such serious doubt as in our opinion would be best solved by holding that such facts as here appear make out a case whose prosecution should be under the specific statute, to-wit: Art. 1056, P. C., and not under the terms of the general act of the 43rd Legislature.

The State's motion is granted to the extent of withdrawing our original opinion and the substitution of what we have here said. Further than this the motion will be overruled, and the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*